IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WYNDHAM HOTEL MANAGEMENT, INC., ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> EUGENE DIBBLE IV, NASSER TASOOJI, AND ) <br> LANGDON NEAL, ) <br> ) <br> Defendants. ) | No. 09 C 7235 <br><br> The Honorable William J. Hibbler |

MEMORANDUM OPINION AND ORDER

In 2007, Glenview Hotel Partners, LLC (GHP) purchased a hotel in Glenview, Illinois. GHP and its members, the Defendants Eugene Dibble, Nasser Tasooji, and Langdon Neal, met with Wyndham Hotel Management, Inc. to discuss the franchising, management, and operation of the hotel that GHP had purchased. Wyndham and GHP reached an agreement, and the hotel became the Wyndham Glenview Suites. The hotel, however, failed, and now Wyndham seeks to collect on a note made by GHP that the Defendants agreed to guarantee. Wyndham moves for summary judgment. In addition, Defendants seek leave to file a counterclaim against Wyndham.

I. Background

In January 2007, GHP and Wyndham executed a Hotel Management Agreement (HMA) governing the management and operation of the Wyndham Glenview Suites. (Def. 56.1(b)(3)(B) St. ("Def St.") ¶ 5). Under the agreement, GHP gave Wyndham the exclusive right to manage and operate the hotel for 10 years and Wyndham agreed to manage the hotel under its brand. (Def. St. ¶ 6). The

HMA called for the Defendants to finance the hotel, but also provided an incentive from Wyndham. (Def. St. ¶ 7; HMA § 1.4). Wyndham agreed to provide a "Key Money Loan" in the amount of $1,750,000 on the hotel's opening date. (Def. ¶ 7; HMA § 1.4). The HMA specified that the loan would amortize on a straight line basis in arrears over ten years, without interest. (HMA § 1.4). The HMA further provided that if the agreement is terminated for any reason prior to the expiration of the initial term of the HMA that GHP would repay the outstanding principal. (HMA § 1.4).

Around the time that Wyndham and GHP executed the HMA, Wyndham, GHP, and the Defendants executed a "Development Incentive Note." (Pl. 56.1(a)(3) St. ("Pl. St.") Ex. 1(A)). The Note provided the terms of the Key Money Loan. It specified that the principal amount would be distributed upon the opening of the Hotel. (Pl. St. Ex. 1(A)). Under the terms of the Note, one-tenth of the principal would be forgiven upon the anniversary of the hotel's opening each year, for ten years. (Pl. St. Ex. 1(A)). However, if the HMA terminated for any reason, the outstanding, unamortized principal balance became due immediately. (Pl. St. Ex. 1(A)). Moreover, if the Note was accelerated and not paid within a grace-period, then interest on the remaining principal balance began to accrue at an annual percentage rate of 18%. (Pl. St. Ex. 1(A)). Finally, the Note specified that the obligation to repay the loan were "absolute and unconditional, and all payments shall be made without setoff, deduction, offset, recoupment or counterclaim. (Pl. St. Ex. 1(A)).

Although Wyndham disbursed the $1,7500,000 principal to GHP and not to the Defendants, the Defendants signed the Note as "Co-Makers." (Pl. St. Ex. 1(A)). The obligations of the Note ran to the Maker, GHP, but the Note defined the term "Maker" to include all persons who signed as "Co-Makers." (Pl. St. Ex. 1(A)). In essence, the Defendants guaranteed the Note by signing as Co-Makers.

Shortly more than two years after the Wyndham Glenview Suites opened, the hotel failed. (Def. St. ¶ 40). GHP defaulted on the mortgage for the hotel, and in February 2009 the lender successfully sought the appointment of a Receiver. (Pl. St. ¶ 30). Under Section 12.1(a)(iv) of the HMA, the appointment of a receiver constituted a default of the HMA, allowing the non-defaulting party to terminate the HMA with 30-days notice. (HMA § 12.1). Wyndham notified GHP that it was terminating the HMA pursuant to § 12.1(a)(iv) and accelerating the unamortized principal balance of the Note, then $1,400,000. (Def. St. ¶ 34 & Ex. 1(B)).

## II. Standard of Review

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct., 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. Fed.R.Civ.P. 56(c). Once the moving party has met the initial burden, the nonmoving party must then "go beyond the pleadings" and "designate specific facts showing that there is a genuine [material] issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmoving party must offer more than a mere scintilla of evidence to survive summary judgment, and conclusory allegations are insufficient to defeat a motion for summary judgment. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir.2005). During the Court's review, it must view all evidence and inferences in the light most favorable to the nonmoving party. *Id.* at 255.

## III. Discussion

The Note contains a choice of law provision, identifying New Jersey's laws as those that govern disputes related to the Note. Under New Jersey law, where the terms of a contract are clear and unambiguous, a court must enforce those terms as they are written. *City of Orange Twp. v. Empire Mortg. Serv., Inc.*, 775 A.2d 174, 179 (N.J. Super. Ct. App. Div. 2001). A court may not rewrite a contract because one might conclude it would be functionally desirable to draft it differently or remake a contract so that it better fits a party's interests. *Karl's Sales and Serv., Inc. v. Gimbel Bros., Inc.*, 592 A.2d 647, 650 (N.J. Super. Ct. App. Div. 1997). In this instance, the Note is clear and unambiguous. The Note states that "the outstanding principal balance of this Note shall be payable . . . if the [HMA] terminates for any reason." It further states that the obligation to "pay this Note shall be absolute and unconditional, and all payments shall be made without setoff, deduction, offset, recoupment, or counterclaim."

Defendants do not dispute that Wyndham disbursed the funds to GHP under the Note. Nor do they dispute that they guaranteed the Note. Nor do they dispute that the language of the Note is clear and unambiguous. Instead, Defendants argue that the Court should construe the Note and the HMA as a single contract. Defendants argue that Wyndham breached its obligations under the HMA and caused the failure of the hotel. Defendants suggest that because Wyndham caused the failure of the Hotel, they are to blame for the termination of the HMA, which caused the Note to accelerate. Thus, Defendants conclude that they are entitled to assert affirmative defenses that preclude the entry of summary judgment.

The Court turns first to the underlying premise of Defendants' argument — that the Court should construe the Note and the HMA as a single contract. Defendants highlight two passages in the Note to

suggest that the Note and the HMA are a single contract. First, Defendants emphasize that the Note is issued "pursuant to the [Hotel] Management Agreement . . . for the operation of a Wyndham System facility." Second, Defendants point out that the Note refers to the HMA for any undefined terms.

It is true, as a general principal of law, that where several writings are made as part of a single transaction relating to a single subject matter, they may be read together. *Schlossman's, Inc. v. Radcliffe*, 70 A.2d 493 (N.J. 1950); *G. Pacillo Contracting, Inc. v. Twp. of S. Orange Vill.*, 2008 WL 2811540, at *5 (N.J. Super. Ct. App. Div. Jul. 23, 2008); *Shelter Sys. Grp. Corp. v. Lanni Builders, Inc.*, 622 A.2d 1345, 1347 (N.J. Super. Ct. App. Div. 1993). New Jersey Courts have applied this rule to guarantee contracts, *see Modern Tech. Grp., Inc. v. Danzi*, 2010 WL 4107747, at *4 (N.J. Super Ct. App. Div. Aug. 12, 2010), *General Elec. Credit Corp. v. Castiglione*, 360 A.2d 418, 424-25 (N.J. Super Ct. Law Div. 1976), and contracts related to loans and mortgages, *see Friendly Consumer Discount Co. v. Foell*, 121 A.2d 434, 436-37 (N.J. Super Ct. App. Div. 1956). The absence of an express incorporation clause or even an express reference does not necessarily mean that such writings should be read independently. *See Mannington Mills, Inc. v. Congoleum Indus., Inc.*, 610 F.2d 1059, 1066 (3rd Cir. 1979); *American Express Co. v. Rona Travel Serv., Inc.*, 187 A.2d 206, 210 (N.J. Super Ct. Ch. Div. 1962). The rule, however, has its limitations and New Jersey courts apply it when the writings are interdependent and draw their essence from one another or where they are incapable of being understood in isolation. *Mannington Mills, Inc.*, 610 F.2d at 1066; *Schlossman's, Inc.*, 70 A.2d at 495; *see also* 11 Williston on Contracts § 30.26 (4th ed. 2010) (explaining that even though instruments relating to the same subject that are executed together may be construed together in order to ascertain the parties' intent, it does not follow that the two instruments should be construed as a single contract).

In this case, it is not clear that the Note and the HMA are writings related to a single transaction concerning the same subject matter such that they could be considered interdependent. The HMA concerns the management and operation of the hotel. Among other things, it specifies the duties of Wyndham as the hotel manager, the employment of hotel personnel, procedures for repairs, maintenance and capital improvement of the hotel, recordkeeping and budget procedures, management fees and reimbursements to the owner, GHP, insurance for the hotel, manager and owner indemnities, and trademarks. The Note, on the other hand, concerns none of the day-to-day operations of the hotel, but rather identifies only a $1,750,000 loan issued as a development incentive. Further, neither the HMA nor the Note contains ambiguities that require reference to the other to further explain or elucidate the intent of the parties.

The language of the HMA further suggests the parties intended two separate writings. For example, the HMA contains a merger and integration clause, incorporating exhibits and addenda into the agreement and specifying that the HMA constitutes the parties' entire agreement. The Note, notably, is not among the exhibits and addenda attached to the HMA. In addition, Section 1.4 of the HMA references the Note, but specifies that it is a *separate* development incentive note. These sections of the HMA reveal the parties' intent to consider the Note and the HMA as separate and distinct documents. Thus, the Defendants' underlying premise — that the Note and the HMA are a single contract — is flawed.

Even if the Court were to consider the writings as a single contract, however, Defendants' argument would still fail. Defendants suggest that some term in the HMA allows them to wriggle free from the unconditional promise they made in the Note. The Note states that the obligation to repay the outstanding principal upon termination of the HMA "for any reason" is "absolute and unconditional,

and all payments shall be made without setoff, deduction, offset, recoupment or counterclaim." The Defendants do not point to a single provision of the HMA that would contravene this unconditional promise.

Defendants bemoan Wyndham's management of the hotel. However, Section 12.1(a)(viii) of the HMA allowed GHP to terminate the HMA if it believed that Wyndham was not meeting its obligations under the HMA. If GHP pursued such a course, however, the outstanding principal balance of the Key Money Loan would have become immediately due — nothing in the HMA's section concerning termination relieved it of the obligation to repay the Key Money Loan in the event that Wyndham's actions caused the HMA to terminate early. To the contrary, the HMA parrots the unconditional language of the Note — stating that if the HMA "is terminated for any reason" the outstanding principal becomes immediately due. Under the plain and unambiguous language of the Note and the HMA, Wyndham's management (or mismanagement) of the hotel simply is not relevant to the question of whether the Defendants had an obligation to repay the outstanding balance of the Key Money Loan.

Defendants make a final argument that Wyndham has not put forth sufficient facts to demonstrate that the HMA was effectively terminated. This argument is frivolous. The HMA states unambiguously that if a receiver is appointed for the property, a default occurs and Wyndham may seek to terminate the HMA. *See* HMA § 12.1(a)(iv) & 12.1(b). The undisputed evidence shows that a receiver was appointed for the property and that some months afterwards, Wyndham notified GHP that it was terminating the HMA. Under the plain, unambiguous, and unconditional terms of the note, the outstanding principal ($1,400,000) of the Key Money Loan became immediately due.

The Court GRANTS Wyndham's Motion for Summary Judgment.

Defendants seek leave to file a counterclaim against Wyndham. After Wyndham filed its claim, the Defendants filed a third-party complaint against GHP. The Defendants promptly settled that complaint, releasing their claims against GHP. As part of the settlement agreement, GHP assigned claims that had arisen from Wyndham's alleged breach of the HMA to the Defendants. Defendants seek to assert claims that Wyndham breached the HMA in its proposed Counterclaim.

Rule 13(e) of the Federal Rules of Civil Procedure allows the filing of counterclaims, whether compulsory or permissive, that a party acquires after it files a responsive pleading. Fed. R. Civ. P. 13(e). A party seeking to file such claims, however, must first get permission from the court. Fed. R. Civ. P. 13(e). Although judicial economy favors trying closely related claims together, where an after-acquired counterclaim will unduly disrupt litigation, a court may exercise its discretion to deny leave to pursue a counterclaim, which then must be pursued in an independent lawsuit. *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 360-61 (7th Cir. 1990).

Wyndham objects to the filing of the counterclaim, arguing that it would be futile because the HMA limits the circumstances under which GHP may assign its claims under the HMA and contains a mandatory Mediation clause. The HMA's Assignment clause prohibits GHP from assigning its claims without assigning its obligations, which is what it did here. The HMA's Assignment clause, however, does not include a provision for survival, unlike numerous other clauses in the Agreement, so it is not clear whether that clause bar the Defendants' Counterclaim. *See* HMA § 10.2. The Mediation clause is limited to claims related to Operating Accounts, Operating Budget, and Annual Plan. *See* HMA § 14. The proposed Counterclaim does make allegations concerning Wyndham's Annual Plan and entire subsection concerning Wyndham's failure to maintain realistic budgets, and so perhaps the Mediation

8

clause applies. The Counterclaim, nevertheless, contains far more references to Wyndham's management of the hotel, which do not appear to fall within the scope of the mediation clause.

The Court need not decide, however, whether the Counterclaim is barred by the Assignment clause or the Mediation clause. Defendants' Counterclaim does not, in essence, arise from the same occurrence or even involve the same parties. Wyndham's Complaint concerned a promissory note. The Defendants' Counterclaim asserts a breach of contract claim of GHP (which is not a party to the current suit) and concerns the management of the hotel — raising a core set of facts that is not relevant or related to Wyndham's claim. More importantly, the Court has granted Wyndham summary judgment on its claim and, thus, the litigation on that claim is finished. The Court holds that allowing the Counterclaim to proceed would unduly delay the resolution of Wyndham's claim because the Court is prepared to enter its final judgment. The Court therefore DENIES the Defendants' request to file their Counterclaim. The Court takes no position on whether this Counterclaim is barred by any provision of the HMA.

IT IS SO ORDERED.

11/10/10
Dated

Hon. William J. Hibbler
U.S. District Court